UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL REFUGEE ASSISTANCE PROJECT,<br><br>　　Plaintiff,<br><br>v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>　　Defendant. | Case No. 1:25-cv-4900<br><br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

　　1.　　This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking to compel Defendant U.S. Citizenship and Immigration Services ("USCIS") to expeditiously process Plaintiff International Refugee Assistance Project's ("IRAP") FOIA request (the "FOIA Request"). The information sought is of crucial and immediate importance to the public, and will impact the safety, stability and due process rights of tens of thousands of refugees and asylees in the United States.

　　2.　　The FOIA Request is for a discrete and tiny universe of documents: the USCIS directive, or directives, ordering an indefinite pause on adjudicating adjustment of status ("AOS") applications filed by refugees and asylees (the "AOS Pause Directive(s)"). The existence of the AOS Pause Directive(s) was first reported by CBS News on March 25,

1

2025, but it has not been released to the public.[1]

3. Adjustment of status is the mechanism by which noncitizens present in the United States obtain lawful permanent resident ("LPR") status, colloquially known as obtaining a "green card."

4. Refugees are required to apply for LPR status within a year of entry to the United States. 8 U.S.C. §§ 1159(b)(1)-(5); 8 C.F.R. § 209.1(a)(1). Individuals with asylum status are eligible to be granted LPR status after accruing a year of physical presence in the United States following a grant of asylum. *See* 8 C.F.R. 209.2(a).

5. LPR status places immigrants on the path to citizenship. LPRs cannot lose their status unless they intentionally abandon that status, become naturalized citizens or are placed in removal proceedings for a limited list of reasons set forth in the Immigration and Nationality Act, and ordered removed by an immigration judge. *See generally* 8 U.S.C. §§ 1227 (enumerating the classes of deportable noncitizens), 1229(a) (providing the systematic framework for the deportation of noncitizens). Neither refugee nor asylum status are guaranteed permanent statuses, making it critical for asylees and refugees to seek LPR status as soon as they are eligible to do so, to enable them to obtain permanent status—and, critically, stability—in the United States.

6. A policy that pauses granting LPR status to refugees and asylees keeps those individuals from obtaining that security. Given that it is critical to understand immediately the effect of the AOS Pause Directive(s) on the lives of tens of thousands of refugees and asylees and their families, IRAP seeks an injunction compelling USCIS to expeditiously

---

[1] *See* Camilo Montoya-Galvez & Nicole Sganga, *Trump administration pauses some green card applications as part of aggressive vetting effort,* CBS NEWS (Mar. 25, 2025), https://www.cbsnews.com/news/green-card-applications-trump-administration/. IRAP attached this article to its FOIA Request. *See* Ex. 1 (referencing article as Exhibit A to the FOIA Request).

process its FOIA Request and promptly produce the AOS Pause Directive(s).

7. In recognizing the AOS Pause Directive(s)' far-reaching implications, IRAP submitted the FOIA request on April 10, 2025, which sought expedited processing. *See* Ex. 1 (IRAP AOS Pause FOIA Request and Request for Expedited Processing). IRAP's FOIA Request demonstrated that IRAP satisfied three independent "compelling need" grounds for expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and the applicable regulation, 6 C.F.R. § 5.5(e)(1). *Id.*, at 2-5. Despite this showing, USCIS denied IRAP's expedited processing request on April 17, 2025, without explanation. *See* Ex. 2 (FOIA Acknowledgment and Denial of Expedited Processing).

8. There is robust public interest, discussion and debate about the scope of the AOS Pause Directive(s), the people the policy impacts, and how the policy fits into the new Administration's multitude of immigration policy announcements. With every day that passes, thousands of directly impacted people go without critical information needed to make both time-sensitive and life-altering decisions in their immigration cases. And immigration attorneys are unable to counsel their impacted clients on any number of nuanced and complex immigration issues while USCIS keeps the AOS Pause Directive(s) hidden from the public.

9. For these reasons, IRAP files the instant action and respectfully requests the Court order USCIS to expeditiously process IRAP's FOIA Request and disclose promptly the AOS Pause Directive(s).

**JURISDICTION AND VENUE**

10. This court has subject-matter jurisdiction over Plaintiff's claims under 5 U.S.C. § 552 *et seq*. (FOIA statute) and 28 U.S.C. § 1331 (federal question). This Court has

authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act).

11. This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(6)(E)(iii) to review an agency's denial of an expedited processing request. *See also* 6 C.F.R § 5.8(e).

12. Venue is proper in this District under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because this is a civil action in which Defendant USCIS is a federal agency, there is no real property involved in this action, and Plaintiff IRAP has its principal place of business in this District.

13. USCIS acknowledged receipt of IRAP's FOIA Request, and denied IRAP's request for expedited processing, by letter on April 17, 2025. *See* Ex. 2. IRAP seeks review of the denial of expedited processing and a declaration that USCIS's denial of IRAP's request for expedited processing was improper.

**PARTIES**

14. Plaintiff IRAP is a 501(c)(3) non-profit organization incorporated under the laws of New York, and headquartered at One Battery Park Plaza, 33rd Floor in New York, New York. IRAP provides direct legal assistance to people seeking safety, including refugees and asylum seekers, and works with a global network of student advocates, pro bono partners, and volunteers to deliver legal solutions for displaced people. Disseminating information is an integral component of IRAP's mission. IRAP relies on FOIA requests such as the requests underlying this lawsuit, to engage in its mission-driven work, and understand governmental policies affecting refugees, asylum seekers and other displaced people on the move.

15. IRAP's work and staff have frequently been featured in prominent national

media outlets, including The New York Times, The Washington Post, Telemundo, NPR, The Atlantic and Axios, to highlight issues impacting refugees, asylum seekers and other displaced people. *See, e.g.*, Miriam Jordan & Jazmine Ulloa, *Immigration Lawyers Prepare to Battle Trump in Court Again*, N.Y. Times (Nov. 11, 2024), https://www.nytimes.com/2024/11/10/us/trump-immigration-court-lawsuits.html (quoting IRAP Founder Becca Heller); Juliana Kim, *What green-card and visa holder should know before traveling abroad*, NPR (Mar. 29, 2025), https://www.npr.org/2025/03/29/nx-s1-5343493/green-card-holders-rights-visa-detained-cbp (featuring IRAP Senior Director of U.S. Legal Services Stephanie Gee); Zoë Schlanger, *Drought Is an Immigration Issue*, The Atlantic (Nov. 18, 2024), https://www.theatlantic.com/science/archive/2024/11/migration-climate-trump/680696/ (featuring Climate Director Ama Francis and IRAP-coauthored report on climate displacement); *Llega a Guantánamo el cuarto avión con inmigrantes indocumentados*, Telemundo (Feb. 13, 2025) https://www.youtube.com/watch?v=Vt6Jg2sZthw (featuring IRAP Acting Director of Policy Hannah Flamm); Sareen Habeshian, *Federal judge temporarily blocks Trump's effort to nix refugee program*, Axios (Feb. 25, 2025), https://www.axios.com/2025/02/25/trump-refugee-program-judge (quoting IRAP Vice President of U.S. Legal Programs Laurie Ball-Cooper). As stated in the FOIA Request, IRAP plans to share information received with the public and interested media.

16.　　Defendant USCIS is a component agency of the U.S. Department of Homeland Security ("DHS"), and is an agency of the United States Government under 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 551(1). USCIS has possession, custody and control over the document(s) IRAP seeks, and is the federal agency primarily responsible for receiving,

adjudicating and setting priorities for the adjudication of affirmative adjustment of status applications.

## FACTUAL ALLEGATIONS

**I.     The AOS Pause Directive and its Impacts**

17.     Upon information and belief, between January 20 and March 25, 2025, USCIS issued the AOS Pause Directive(s), *i.e.*, a directive, memorandum, or guidance document with immediate effect, directing USCIS directorates and program offices to pause adjudication of adjustment of status applications filed by refugees and asylees, without providing affected applicants any notice of or opportunity to challenge the pause. CBS News first broke the news of the AOS Pause Directive(s) on March 25, 2025. *See* Camilo Montoya-Galvez & Nicole Sganga, *Trump administration pauses some green card applications as part of aggressive vetting effort,* CBS News (Mar. 25, 2025), https://www.cbsnews.com/news/green-card-applications-trump-administration/.

18.     Refugees are eligible to apply for adjustment of status, *inter alia*, after one year of physical presence in the United States. *See* 8 U.S.C. §§ 1159(b)(1)-(5) (setting forth the eligibility requirements for refugees' adjustment of status to LPR status); 8 C.F.R. § 209.1(a)(1) (outlining the eligibility criteria for refugees to adjust their status to LPR status, including that they are "required" to apply for adjustment of status "one year after entry" as refugees).

19.     Asylees are eligible for adjustment of status, *inter alia*, after accruing one year of physical presence in the United States. *See* 8 C.F.R. 209.2(a) (outlining the eligibility criteria for asylees to adjust their status to LPR status after one year of physical presence in the United States following grant of asylum).

20. Upon information and belief, under the AOS Pause Directive(s), officials have indefinitely suspended processing, adjudicating and/or finalizing any applications for adjustment of status filed by refugees and asylees. And no details have been provided to the public as to the exact nature, end date, or scope of the pause.

21. The undisclosed federal policy impacts tens of thousands of refugees and asylees who have applied for adjustment of status. As stated in the FOIA Request, as of the last quarter of Fiscal Year 2024, 80,954 asylees and 44,601 refugees had adjustment of status applications pending before USCIS.[2] As of the first quarter of Fiscal Year 2025, 21,727 asylees and 16,725 refugees applied for adjustment of status.[3] Since the announcement of the AOS Pause Directive(s), many more refugees and asylees have likely applied for adjustment of status, adding to the already large backlog of applications in USCIS's case processing pipeline.

22. As of the date of the filing of this action, the AOS Pause Directive(s) have not been made public either via official government websites or through the news media.

23. There has been intense public discussion and debate about the AOS Pause Directive(s) specifically,[4] and about the precarious situation faced by noncitizens without

---

[2] *See*, Ex. 1, at 1; *All USCIS Application and Petition Form Types* (Fiscal Year 2024, Quarter 4), USCIS, (Dec. 18, 2024), https://www.uscis.gov/sites/default/files/document/data/quarterly_all_forms_fy2024_q4.xlsx.

[3] *See All USCIS Application and Petition Form Types* (Fiscal Year 2025, Quarter 1), USCIS, (Apr. 30, 2025), https://www.uscis.gov/sites/default/files/document/data/quarterly_all_forms_fy2025_q1.xlsx.

[4] *See, e.g.*, Camilo Montoya-Galvez, *Trump administration pauses some green card applications as part of aggressive vetting effort*, CBS News, (Mar 25, 2025, 1:42 PM), https://www.cbsnews.com/news/green-card-applications-trump-administration/; Adam Gabbatt, *Trump officials pause some green card applications in immigration crackdown*, The Guardian, (Mar. 26, 2025, 9:41 PM), https://www.theguardian.com/us-news/2025/mar/26/trump-signal-chat-middle-east-opinion; Luis Pablo Beauregard, *Green Card Applications for Refugees and Asylees Suspended by Trump Administration*, El País, (Mar. 26, 2025, 4:55 PM), https://english.elpais.com/usa/2025-03-26/united-states-suspends-green-card-processing-for-some-refugees-and-asylees.html; Allison Detzel, *Trump administration pauses processing some green cards, throwing thousands into limbo*, MSNBC, (Mar. 26, 2025, 4:48 PM), https://www.msnbc.com/top-stories/latest/trump-pauses-green-card-immigration-vetting-rcna198249; Suzanne

the security of LPR status more generally.[5] As detailed in the FOIA Request, noncitizens who have been granted fear-based protection from removal but lack LPR status have recently been detained and wrongfully removed from the United States without a hearing and in violation of court orders and due process.[6] Additionally, it has been reported that green card applicants have been arrested by Immigration and Customs Enforcement at their scheduled immigration benefit interviews.[7] These events have been the subject of widespread media attention and public interest.

24.     Once a noncitizen receives a green card, they have the security of lawful permanent resident status in the United States; the lack of clarity regarding the indefinite

---

Gamboa and Laura Strickler, *Trump administration stops processing some green cards 'to do more vetting'*, NBC NEWS, (Mar. 25, 2025, 6:18 PM), https://www.nbcnews.com/news/latino/trump-administration-stops-processing-green-cards-vetting-rcna198061; Dan Gooding, *Trump Administration Pauses Some Green Card Applications*, NEWSWEEK, (Mar. 25, 2025, last updated 6:38 PM), https://www.newsweek.com/trump-administration-pauses-green-card-applications-refugees-asylum-seekers-2050388; Rebecca Beitsch, *Administration pause on 'green card' processing is harmful to refugees and asylees*, THE HILL, (Mar. 25, 2025, 3:51 PM), https://thehill.com/homenews/5213453-us-green-card-application-pause/.

[5] *See, e.g.*, Alan Feuer and Karoun Demirjian, *What to Know About the Deportation of Abrego Garcia to El Salvador*, N.Y. TIMES (Apr. 21, 2025), https://www.nytimes.com/article/abrego-garcia-trump-deportations-el-salvador.html; Gaurav Pokharel, *Nepali-speaking Bhutanese refugees in limbo after deportation from US*, THE GUARDIAN (Apr. 21, 2025, 2:00 PM), https://www.theguardian.com/world/2025/apr/21/bhutan-nepal-us-immigration; Whitney Eulich and Andrea Salcedo, *Panama accepted asylum-seekers the US didn't want. Then its troubles began*, THE CHRISTIAN SCIENCE MONITOR (Apr. 21, 2025, 12:59 PM), https://www.csmonitor.com/World/Americas/2025/0421/panama-trump-asylum-seekers-deportees; Jonathan Blitzer, *The Makeup Artist Donald Trump Deported Under the Alien Enemies Act, New Yorker*, THE NEW YORKER (Mar. 31, 2025), https://www.newyorker.com/news/annals-of-immigration/the-makeup-artist-donald-trump-deported-under-the-alien-enemies-act.

[6] *See* Ex. 1 at 3; Priscilla Alvarez and Michael Williams, *Trump administration concedes Maryland father from El Salvador was mistakenly deported and sent to mega prison,* CNN (Apr. 2, 2025, last updated 3:37 PM), https://www.cnn.com/2025/04/01/politics/maryland-father-mistakenly-deported-el-salvador-prison/index.html, (describing the detention and wrongful deportation without due process of a noncitizen granted Withholding of Removal status); Tom Phillips and Clavel Rangel, *'Deported because of his tattoos': has the US targeted Venezuelans for their body art?,* THE GUARDIAN, (Mar. 20, 2025, 7:42 PM), https://www.theguardian.com/us-news/2025/mar/20/deported-because-of-his-tattoos-has-the-us-targeted-venezuelans-for-their-body-art (profiling asylum seekers who, without due process, were detained and deported by the government).

[7] *See, e.g.,* Ilana Arougheti, *Kansas woman went to KC for a green card interview. Now, she faces deportation*, THE KANSAS CITY STAR (last updated Apr. 29, 2025, 12:21 PM), https://www.kansascity.com/news/local/article304988381.htmlhttps://www.kansascity.com/news/local/article304988381.html.

pause of green card adjudications for refugees and asylees creates an atmosphere of fear, confusion, and uncertainty. Directly impacted communities, and the legal organizations that serve them (including IRAP), are engaged in a monumental effort to discern the current state of already complicated immigration laws, the lawfulness of the Administration's actions, and how best to proceed on individual and systemic bases. USCIS's failure to disclose the AOS Pause Directive(s) has left eligible refugees and asylees in the dark about the status of their pending or anticipated adjustment of status applications and compromises the interests of the public, and impacted refugees and asylees, in obtaining timely information vital to their individual cases and the ongoing debates around immigration benefits.

25. Tens of thousands of directly impacted individuals, along with their attorneys, families, employers, and communities, are forced to guess at what could become of their immigration cases, and—given that they are refugees and asylees who have fled persecution, torture, and harm in their countries of origin—their very lives, and what steps they should take in response.

26. With the AOS Pause Directive(s) shrouded in secrecy, at least approximately 120,000 refugees and asylees, immigration attorneys who represent impacted clients, and the public at large cannot assess the impact of the Directive(s) on individual cases or on a systemic basis.

27. IRAP has been unable to provide complete information about the AOS Pause Directive(s) or informed guidance about the policy's impact on the public because the Directive(s) are not available publicly.

28. Just as IRAP is unable to fully assess the benefits and risks faced by impacted

refugees and asylees without the AOS Pause Directive(s) being made public, neither can individuals, their families, lawyers, employers, or communities.

29. While the complexity and nuance of immigration law makes it impossible to assess the full extent of the harms that are accruing each day the AOS Pause Directive(s) remains concealed from the public, the pause of adjustment of status case adjudication leaves at least approximately 120,000 refugees and asylees in limbo, without knowing whether they still have a means of achieving stability and safety in the United States after fleeing persecution, torture and harm in their home countries.

II. **Plaintiff's FOIA Request and Request for Expedited Processing**

30. IRAP's FOIA Request explicitly requested that its processing be expedited pursuant to 5 U.S.C. § 552(a)(6)(E)(v)(II) and the recipient Defendant's applicable regulations. *See* 6 C.F.R. § 5.5(e)(1); Ex. 1 at 1-2. The FOIA Request asked that USCIS expedite processing of the request for three independent reasons. First, the FOIA Request involves "an urgency to inform the public about an actual or alleged federal government activity" by IRAP, an organization "primarily engaged in disseminating information." *See* 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5(e)(1)(ii); Ex. 1 at 3-4. Second, the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual. *See* 5 U.S.C. § 552(a)(6)(E)(v)(I); 6 C.F.R. § 5.5(e)(1)(i); Ex. 1 at 2-3. Third, the FOIA Request involves the "loss of substantial due process rights." *See* 6 C.F.R. § 5.5(e)(1)(iii). The FOIA Request included "a statement, certified to be true and correct, explaining in detail the basis for making the request for expedited processing," as required by 6 C.F.R. § 5.5(e)(3). *See* Ex. 1 at 2-5.

31. As stated in the FOIA Request, IRAP is a 501(c)(3) non-profit organization that

utilizes media and systemic policy advocacy, direct legal aid, and impact litigation to serve refugees, asylum seekers, and other people seeking safety.[8] IRAP works with a global network of student advocates, pro bono partners, and volunteers to deliver legal solutions for displaced people. Disseminating information is an integral component of IRAP's mission to create a world where people seeking safety are empowered.[9] To engage in its mission-driven work, IRAP relies on FOIA requests, such as the request underlying this lawsuit, to understand governmental policies affecting refugees, asylum seekers and other displaced people on the move. IRAP intends to use the data sought in the instant request to educate the public about a federal policy pausing the adjudication of adjustment of status applications of refugees and asylees, and to inform its advocacy and legal services.

32. For instance, since 2009, IRAP has filed over a hundred FOIA requests and published thousands of pages of government documents obtained as a result of those requests on its website and a global document sharing platform[10] to provide the public with a clearer understanding of how various immigration processes work and are affected by government policies, including those impacting refugees and asylees.[11]

33. IRAP routinely analyzes and uses materials obtained through FOIA and other methods to create and publish informational and educational materials about safe pathways for displaced people.[12] These materials are widely disseminated to the public free-of-charge

---

[8] *See Mission & Values*, IRAP (last accessed Jun. 5, 2025) https://refugeerights.org/who-we-are/mission-values; *News & Resources*, IRAP (last accessed Jun. 5, 2025) https://refugeerights.org/news-resources-2.
[9] *See Mission & Values*, IRAP, *supra note* 6.
[10] *See IRAP's U.S. Government Document Collections*, IRAP (last accessed Jun. 5, 2025), https://refugeerights.org/freedom-of-information-act-foia-work-document-collections.
[11] *See IRAP Shares Its Archive of Thousands of U.S. Government Policy and Training Documents Obtained Through the Freedom of Information Act*, IRAP (last accessed Jun. 5, 2025), https://refugeerights.org/news-resources/irap-shares-its-archive-of-thousands-of-u-s-government-policy-and-training-documents-obtained-through-the-freedom-of-information-act.
[12] *See, e.g.*, *IRAP Shares U.S. Government Training and Guidance Documents Related to Afghan Refugee, Asylum, SIV, and Parole Processing*, IRAP (last accessed Jun. 5, 2025), https://refugeerights.org/news-resources/irap-shares-u-s-government-policy-training-and-other-documents-related-to-afghan-refugee-asylum-siv-and-parole-processing; *Practice Advisory: New Central American Minors (CAM)*

through IRAP's legal information website, blogs and publications posted on its website, and social media platforms.[13]

34. Additionally, expedited processing is warranted because the AOS Pause Directive(s) leaves approximately 120,000 refugees and asylees without a clear path to permanent status and potentially vulnerable to reopening or termination of their status without full immigration court hearings. See 8 C.F.R. § 207.9 (outlining process for termination of refugee status); 8 C.F.R. § 208.24 (outlining process for terminating asylum status). This could lead to eventual removal to countries where their physical safety or lives are in danger. See 5 U.S.C. § 552(a)(6)(E)(v)(I); 6 C.F.R. § 5.5(e)(1)(i).

35. As explained in the FOIA Request, the pause of adjustment of status case adjudication leaves refugees and asylees in limbo, without knowing whether they have a means of achieving stability and safety in the United States after "fleeing persecution, torture, and harm" in their home countries.[14]

36. Under the Immigration and Nationality Act, green card holders have more robust protections from deportation and removal than other noncitizens. See 8 U.S.C. § 1101(a)(20) ("The term "lawfully admitted for permanent residence" means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws[.]"). As a result, the pause on adjudicating green card applications not only deprives refugees and asylees of the due process right to pursue LPR status but also exposes them to increased risk of detention and

---

*Program Documents Answer Questions About Processing*, IRAP (last accessed Jun. 5, 2025), https://refugeerights.org/news-resources/practice-advisory-new-central-american-minors-cam-documents-answer-questions-about-processing.

[13] *See, e.g.*, International Refugee Assistance Project (@IRAP), Twitter, https://twitter.com/IRAP; International Refugee Assistance Project, Facebook, https://www.facebook.com/RefugeeAssist/.

[14] *See* Ex. 1 at 2 and Lindsay Muir Harris, *Administration pause on "green card" processing harmful to refugees and asylees*, THE HILL, (Apr. 3, 2025, 11:30 AM), https://thehill.com/opinion/5228314-immigration-policy-change/.

removal. These increased threats may result in loss of safety for individuals who have already been assessed by the U.S. government to have a right to protection in the United States from persecution, torture and harm in their home countries.[15]

37. Furthermore, expedited processing is warranted because IRAP's FOIA Request implicates the "loss of substantial due process rights." *See* 6 C.F.R. § 5.5(e)(1)(iii). As noted in the FOIA Request, the undisclosed AOS Pause Directive(s) has indefinitely paused adjudication of pending green card applications filed by approximately 120,000 refugees and asylees, without giving the impacted individuals notice of or an opportunity to challenge the indefinite pause.[16]

38. The FOIA Request also sought a fee waiver, explaining that disclosure of the information is in the public interest and that disclosure of the information is not in IRAP's commercial interest. *See* Ex. 1 at 5-7.

### III. USCIS's Response to IRAP's FOIA Request

39. By letter dated April 17, 2025, USCIS acknowledged receipt of the FOIA Request. *See* Ex. 2 at 1.

40. USCIS's letter assigned the case number COW2025002595 and granted IRAP's request for a fee waiver. *Id*. at 1-2. In so doing, USCIS accepted IRAP's reasons for seeking a waiver of fees.

41. USCIS's April 17, 2025 letter placed the case on USCIS's complex track (Track 2) for processing FOIA requests and invoked a 10-day extension to the response deadline

---

[15] *See, e.g.,* Jonah E. Bromwich, *Immigration Judge Rules Khalil Can Be Deported, but Legal Hurdles Remain*, N.Y. TIMES, (Apr. 11, 2025), https://www.nytimes.com/2025/04/11/nyregion/khalil-jena-deportation-ruling.html; Camilo Montoya-Galvez, *Judge blocks Trump administration from deporting 21-year-old Columbia protester and green card holder*, CBS NEWS, (Mar. 25, 2025, 5:40 PM), https://www.cbsnews.com/news/yunseo-chung-columbia-student-south-korea-ice-deportation/ (both articles describing greater due process protections afforded to green card holders as compared to noncitizens without LPR status). *Compare with supra* note 6.

[16] *See* Ex. 1 at 5.

pursuant to 5 U.S.C. § 552(a)(6)(B). *See* Ex. 2 at 1-2.

42. USCIS's April 17, 2025 letter also denied IRAP's request for expedited processing, stating, "Based on the information you provided, we have determined that expedited processing of your request is not warranted." *Id*. at 1. The letter did not acknowledge or respond to IRAP's reasons for requesting expedited processing under three of the four DHS regulatory grounds for expedition at 6 C.F.R. §§ 5.5(e)(1)(i)-(iii), nor did it provide any explanation as to why USCIS denied IRAP's request for expedited processing. Instead, it merely set forth the DHS regulations providing grounds for expedited processing. *See id.* (reciting 6 C.F.R. §§ 5.5(e)(1)(i)-(iv)).

43. Further, although the FOIA Request for the AOS Pause Directive(s) seeks a very narrow universe of documents, and perhaps even just a single document, USCIS placed the Request in the "complex track (Track 2)." *See* Ex. 2 at 1.

### IV.  Plaintiff's Appeal to USCIS's Response

44. On May 8 and May 12, 2025, IRAP, by electronic and certified mail, respectively, timely filed an administrative appeal to USCIS's determination denying IRAP's Expedited Processing Denial of the FOIA Request for the AOS Pause Directive(s). *See generally* Ex. 3 (Appeal of Expedited Processing Denial).

45. Additionally, IRAP challenged USCIS's placement of the FOIA Request on the "complex track" or Track 2 for processing. *Id.* at 6-7.

46. USCIS has not produced any records or made any substantive response to the FOIA Request.

47. USCIS produced a similar policy directive regarding a pause on applications filed by immigrants paroled into the United States only after advocates filed lawsuits

challenging parole policies and demanding production of documents related to the pause.[17] *Id.* at 7. That policy directive, entitled "Administrative Hold on All USCIS Benefit Requests filed by Parolees Under the Uniting for Ukraine (U4U) Process, Processes for Haitians, Cubans, Nicaraguans, and Venezuelans (CHNV) Process, or Family Reunification Parole (FRP) Process," is a mere three pages.[18] *Id.*

## CLAIMS FOR RELIEF

## COUNT I

## Violation of FOIA, 5 U.S.C. § 552,

## Failure to Grant Request for Expedited Processing

48. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

49. Under FOIA, agencies must promulgate regulations providing for expedited processing of requests for records when the requestor "demonstrates a compelling need," 5 U.S.C. § 552(a)(6)(E)(i)(I), which means the request was "made by a person primarily engaged in disseminating information" and there is an "urgency to inform the public concerning actual or alleged Federal Government activity," *id.* § 552(a)(6)(E)(v)(II); when "a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," *id.* § 552(a)(6)(E)(v)(I); or "in other cases determined by the agency." *Id.* § 552(a)(6)(E)(i)(II).

50. USCIS promulgated regulations for expedited processing of FOIA requests at 6

---

[17] *See generally Asylum Seeker Advoc. Project v. USCIS*, No. 1:25-cv-02133-ALC (S.D. N.Y. Mar. 14, 2025) (FOIA lawsuit challenging the denial of expedited production of a single policy document, filed by the Asylum Seeker Advocacy Project, a legal advocacy nonprofit organization,); *see also Doe v. Noem*, No. 1:25-cv-10495-IT (D. Mass. Mar. 21, 2025), ECF No. 41-3 (disclosing the single policy document at issue).
[18] *See Doe v. Noem*, No. 1:25-cv-10495-IT (D. Mass. Mar. 21, 2025), ECF No. 41-3.

C.F.R. § 5.5(e)(1), dictating that "Requests and appeals will be processed on an expedited basis whenever the component determines that they involve" "(ii) An urgency to inform the public about an actual or alleged federal government activity, if made by a person who is primarily engaged in disseminating information;" "(i) Circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual;" or "(iii) The loss of substantial due process rights[.]"

51.     IRAP requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and USCIS's implementing regulations, 6 C.F.R. § 5.5(e)(1), subparts (i), (ii), and (iii), and demonstrated why each of these grounds for expedited processing is independently warranted. *See* Ex. 1 at 2–5.

52.     USCIS summarily denied expedited processing in its letter dated April 17, 2025. *See* Ex. 2 at 1.

53.     USCIS's failure to grant IRAP's expedited processing request violates 5 U.S.C.§ 552(a)(6)(E) and USCIS's own regulations.

## COUNT II

## Violation of FOIA, 5 U.S.C. § 552,

## Failure to Conduct an Adequate Search for Responsive Records

54.     Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if repeated and incorporated herein.

55.     The Defendant is obligated under 5 U.S.C. § 552(a)(3)(C) to conduct a reasonable search for records responsive to the Plaintiffs' FOIA Request.

56.     The Plaintiffs have a legal right to obtain such records, and no legal basis exists for the Defendant's failure to search for them.

57. The Defendant's failure to conduct a reasonable search for records responsive to the Plaintiffs' Requests violates, at a minimum, FOIA, and the regulations promulgated thereunder. *See* 5 U.S.C. § 552(a)(3)(C); 22 C.F.R. § 171.11.

### COUNT III

### Violation of FOIA, 5 U.S.C. § 552,

### Failure to Disclose Responsive Records

58. Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if repeated and incorporated herein.

59. The Defendant is obligated under 5 U.S.C. § 552(a)(3) to promptly produce records responsive to the Plaintiffs' FOIA request.

60. The Plaintiffs have a legal right to obtain such records, and no legal basis exists for the Defendant's failure to disclose them.

### COUNT IV

### Violation of FOIA, 5 U.S.C. § 552,

### Failure to Respond within the Time Required by Statute

61. Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if repeated and incorporated herein.

62. Defendant is obligated under 5 U.S.C. § 552(a)(6)(A)(i) to respond to the Request within 20 days from the receipt.

63. 5 U.S.C. § 552(a)(3)(A) requires Defendant to make the requested records "promptly available," to Plaintiffs.

64. Plaintiffs have a legal right to obtain the records sought, and no legal basis exists for the Defendant's failure to disclose them.

65. Defendant's failure to disclose all responsive records violates, at a minimum, FOIA, as well as the regulations promulgated thereunder. *See* 5 U.S.C. § 552(a)(3)(A); 6 C.F.R. § 5.6.

## **PRAYER FOR RELIEF**

WHEREFORE, IRAP respectfully requests that this Court:

66. Assume jurisdiction over this action and maintain jurisdiction until USCIS produces the AOS Pause Directive(s) and complies with every Order of this Court;

67. Declare that USCIS is in violation of FOIA by unlawfully withholding the requested records and failing to grant expedited processing;

68. Order USCIS to complete expedited processing and respond to the FOIA Request, including by conducting a reasonable search for the requested records and promptly disclosing them at no cost;

69. Award IRAP reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E), the Equal Access to Justice Act, and any other applicable provision of law; and

70. Grant such other and further relief as the Court may deem just and appropriate.

Dated: June 11, 2025

                                                      Respectfully submitted,

                                                      /s/ Pedro Sepulveda, Jr.

                                                      Pedro Sepulveda, Jr.
                                                      Ghita Schwarz
                                                      Mevlüde Akay Alp
                                                      International Refugee Assistance Project
                                                      One Battery Park Plaza, 33rd Floor
                                                      New York, NY, 10004
                                                      Tel: (646) 946-7453
                                                      psepulveda@refugeerights.org
                                                      gschwarz@refugeerights.org
                                                      makayalp@refugeerights.org