# Exhibit 3



International Refugee
Assistance Project

## FREEDOM OF INFORMATION ACT APPEAL

Date: May 8, 2025

U.S. Citizenship and Immigration Services
FOIA/PA Appeals Office
150 Space Center Loop, Suite 500
Lee's Summit, MO 64064-2139
*Sent via certified mail:* **9589 0710 5270 1874 1489 32**
*And via electronic mail:* **FOIAPAQuestions@uscis.dhs.gov**

### RE:    FOIA APPEAL of Denial of Expedited Processing
### USCIS FOIA Control Number: COW2025002595

To Whom It May Concern:

The International Refugee Assistance Project ("IRAP") appeals the determination of the agency U.S. Citizenship and Immigration Services ("USCIS") to deny IRAP's Freedom of Information Act ("FOIA") request (the "FOIA Request"), dated April 10, 2025.

The FOIA Request seeks the production of a discrete and tiny universe of documents: the USCIS directive, or directives, ordering an indefinite pause on adjudicating adjustment of status applications filed by refugees and asylees (the "AOS Pause Directive(s)"). IRAP requested a fee waiver and expedited processing of the FOIA Request. A copy of that request is enclosed as **Exhibit A.**

By letter dated April 17, 2025, USCIS granted IRAP's fee waiver request but denied IRAP's expedited processing request ("Expedited Processing Denial"). A copy of that letter, dated April 17, 2025 and signed by James A Baxley, Chief FOIA Officer, is enclosed as **Exhibit B.** USCIS stated that "expedited processing of [the FOIA Request] is not warranted", *see* Ex. B. at 1, but contained no findings and merely recited the Department of Homeland Security ("DHS") regulations providing grounds for expedited processing. *See id.* (reciting 6 C.F.R. §§ 5.5(e)(1)(i)-(iv)).

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552(a)(6), IRAP hereby appeals the Expedited Processing Denial of the FOIA Request for the AOS Pause Directive(s), and, in addition, challenges the placement of the FOIA Request on the "complex track" or "Track 2" for processing.

### I.    Appeal of Expedited Processing Denial

IRAP appeals the instant Expedited Processing Denial. In its FOIA Request, IRAP demonstrated that it satisfied three independent "compelling need" grounds for expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and the applicable regulation, 6 C.F.R. § 5.5(e)(1), *see* Ex. A, at 2-5. First, the FOIA Request involves "an urgency to inform the public about an actual or alleged federal government activity" by IRAP, an organization "primarily

## FREEDOM OF INFORMATION ACT APPEAL

engaged in disseminating information." *See* 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5(e)(1)(ii); Ex. A at 3-4. Second, the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual. *See* 5 U.S.C. § 552(a)(6)(E)(v)(I); 6 C.F.R. § 5.5(e)(1)(i); Ex. A at 2-3. Third, the FOIA Request involves the "loss of substantial due process rights." *See* 6 C.F.R. § 5.5(e)(1)(iii); Ex. A at 5.

Despite this, USCIS neither acknowledged nor responded to IRAP's reasons for requesting expedited processing under three of the four DHS regulatory grounds for expedition at 6 C.F.R. §§ 5.5(e)(1)(i)-(iii), nor did it provide any explanation as to why USCIS denied IRAP's request for expedited processing. Instead, USCIS merely recited boilerplate language,[1] including setting forth the DHS regulations providing grounds for expedited processing. *See* Ex. B. at 1 (reciting 6 C.F.R. §§ 5.5(e)(1)(i)-(iv)). USCIS's boilerplate language fails to analyze or reference the facts documented in the FOIA Request. Although IRAP meets all three standards, USCIS need only find that one is met to grant the expedited processing of the FOIA Request.

### A. It is Urgent that IRAP, an Organization Primarily Engaged in Disseminating Information, Inform the Public About the AOS Pause Directive(s)

IRAP has indeed demonstrated that an urgent need exists to inform the public, *see* 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5(e)(1)(ii), about the AOS Pause Directive(s), an undisclosed federal policy that impacts at least tens of thousands of people. *See* Ex. A at 3-4. Further, IRAP has demonstrated that it is "primarily engaged in disseminating information." *Id.* at 4.

#### (a) Urgency to Inform the Public about Federal Government Activity

USCIS's order directing officials to suspend adjudication of adjustment of status applications is clearly a federal government activity. It is critical that the public be informed of such a policy, which effectuates the federal government's decision to indefinitely suspend such applications for at least tens of thousands of refugees and asylees. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II); *see also* Camilo Montoya-Galvez & Nicole Sganga, *Trump administration pauses some green card applications as part of aggressive vetting effort,* CBS News (Mar. 25, 2025), https://www.cbsnews.com/news/green-card-applications-trump-administration/.[2]

As the FOIA Request documented, reporting of a statement by DHS indicates that USCIS has already implemented an administrative pause of refugee and asylee Adjustment of Status applications "pending the completion of additional screening and vetting". *See* Ex. A at 3. But without public disclosure of the policy, tens of thousands of refugees and asylees and the public have little to no understanding of the federal government's policy, the details surrounding or

---

[1] USCIS also included a statement in its letter that "6 C.F.R. § 5.5(e)(3) requires that a requester who seeks expedited processing must submit a statement, certified to be true and correct, explaining in detail the basis for making the request for expedited processing." Ex. B. at 1. However, IRAP provided such a statement in support of the FOIA Request. *See* Ex. A. at 5 ("IRAP certifies that the information provided in support of the request for expedited processing is true and correct to the best of the Requestor's knowledge and belief. *See* 5 U.S.C. §552(a)(6)(E)(vi) and 6 C.F.R. § 5.5(e)(3).").

[2] IRAP attached this article to the FOIA Request. *See* Ex. A (referencing article as Exhibit A to the FOIA Request).

## FREEDOM OF INFORMATION ACT APPEAL

rationale for the pause, or how to challenge or request review of a pause in a particular person's case or on a systemic basis. *Id.* For example, recent reporting has raised similar concerns, including that "[USCIS's] statement did not address which applications were affected, whether the pause would affect spending at the agency, how long it would last[.]" *Id.* at n.6.

Expedited processing is particularly appropriate in cases where, as here, the FOIA request "concerns a matter of current exigency to the American public" and "the consequences of delaying a response would compromise a significant recognized interest." *Bloomberg, L.P. v. U.S. Food & Drug Admin.*, 500 F. Supp. 2d 371, 377 (S.D.N.Y. 2007) (quoting *Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001)). "In other words, the event at issue must be the subject of a currently unfolding story." *Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87, 98 (D.D.C. 2020) (alteration, internal quotation marks, and citation omitted). IRAP cited "numerous [published] articles" on the government's separate actions limiting access to asylum and suspending the U.S. refugee admission program (viewed as a whole together with the AOS Pause Directive(s), constitute a one-two punch directed at refugees and asylees), which makes clear that there is "an 'urgency to inform' the public on the topic." 6 C.F.R. § 5.5(e)(3); *see, e.g.* Ex. A at 3-4 & ns.7-8 (collecting several articles). This extensive attention from national media outlets demonstrates that there is intense public interest in the AOS Pause Directive(s). *See Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 299 (D.D.C. 2017) (concluding that "widespread media attention—including by some of the nation's most prominent news outlets" is "strong evidence of an 'urgency to inform' the public").

The urgency to inform the public about the policy has grown even since the filing of the FOIA Request in April 2025. For example, there has been widespread coverage of threatened arrests and detention of people with non-LPR lawful immigration status.[3] As detailed in the FOIA Request, noncitizens who have obtained protection from removal but who lack LPR status have been detained and wrongfully removed from the United States without a hearing and in violation of court orders and due process.[4] These events have been the subject of widespread

---

[3] *See, e.g.*, Sarah Blaskey, et al., *Trump's 48-hour scramble to fly migrants to a Salvadoran prison*, WASHINGTON POST (May 4, 2025), https://www.washingtonpost.com/immigration/2025/05/04/trump-el-salvador-alien-enemies-act-venezuelans/ (describing the Trump-Vance Administration's detention and deportation, without due process, of hundreds of Venezuelan noncitizens, including refugees and others who have been granted humanitarian-based protection from removal); Alan Feuer and Karoun Demirjian, *What to Know About the Deportation of Abrego Garcia to El Salvador*, N.Y. TIMES (Apr. 21, 2025), https://www.nytimes.com/article/abrego-garcia-trump-deportations-el-salvador.html (describing the wrongful removal of a noncitizenl with fear-based protection from removal); Gaurav Pokharel, Nepali-speaking Bhutanese refugees in limbo after deportation from US, THE GUARDIAN (Apr. 21, 2025, 2:00 PM), https://www.theguardian.com/world/2025/apr/21/bhutan-nepal-us-immigration (describing the detention and removal, without due process, of Bhutanese refugees) ; Whitney Eulich and Andrea Salcedo, *Panama accepted asylum-seekers the US didn't want. Then its troubles began*, THE CHRISTIAN SCIENCE MONITOR (Apr. 21, 2025, 12:59 PM), https://www.csmonitor.com/World/Americas/2025/0421/panama-trump-asylum-seekers-deportees (describing the removal, without due process, of asylum seekers to Panama)

[4] *See, e.g.*, Priscilla Alvarez and Michael Williams, *Trump administration concedes Maryland father from El Salvador was mistakenly deported and sent to mega prison* CNN (Apr. 2, 2025, last updated 3:37 PM), https://www.cnn.com/2025/04/01/politics/maryland-father-mistakenly-deported-el-salvador-prison/index.html,

3

## FREEDOM OF INFORMATION ACT APPEAL

media attention and public interest.

### (b) IRAP is Primarily Engaged in Disseminating Information

Further, as documented in the FOIA Request, IRAP is a 501(c)(3) nonprofit organization primarily engaged in disseminating information. Indeed, dissemination, at no cost, of accurate, current information about topics related to pathways to safety for displaced persons is crucial to IRAP's mission to create a world where people seeking safety are empowered. Ex. A at 4 (citing *Mission & Values*, IRAP (last accessed Apr. 30, 2025) https://refugeerights.org/who-we-are/mission-values). In its Strategic Plan for 2023-2028, IRAP has articulated a five-pronged coordinated model, which includes utilizing media advocacy ("IRAP uses communications strategies to move public opinion in support of systemic change that can benefit large groups of people seeking safety") and legal information ("Using knowledge gained from IRAP's legal services and advocacy, IRAP provides comprehensive and accessible legal information on immigration-related matters in multiple languages that can be used by people seeking safety and by partner organizations working with them."), to implement its mission and vision.[5] IRAP also relies on FOIA requests, such as the request underlying this lawsuit, to understand governmental policies affecting refugees, asylum seekers and other displaced people on the move. IRAP intends to use the data sought in the instant request to educate the public about a federal policy pausing the adjudication of adjustment of status applications of refugees and asylees, and to inform its advocacy and legal services.

For instance, since 2009, IRAP has filed over a hundred FOIA requests and published thousands of pages of government documents obtained as a result of those requests on its website and a global document sharing platform to provide the public with a clearer understanding of how various immigration processes work and are affected by government policies, including those impacting refugees and asylees.[6] As of October 2024, over 60,000 pages of U.S. governmental policies related to, among others, refugees and parolees to IRAP's U.S. government document collections.[7]

IRAP routinely analyzes and uses materials obtained through FOIA and other methods to create and publish informational and educational materials about safe pathways for displaced

---

(describing the detention and wrongful deportation without due process of a noncitizen granted fear-based protection from removal); Tom Phillips and Clavel Rangel, *'Deported because of his tattoos': has the US targeted Venezuelans for their body art?*, The Guardian, (Mar. 20, 2025, 7:42 PM), https://www.theguardian.com/us-news/2025/mar/20/deported-because-of-his-tattoos-has-the-us-targeted-venezuelan s-for-their-body-art (profiling asylum seekers who, without due process, were detained and deported by the government).

[5] *See Strategic Plan, 2023-2028*, IRAP, 5 (last accessed Apr. 30, 2025), https://refugeerights.org/wp-content/uploads/2023/02/Strategic-Plan-2023-28.pdf.

[6] *See IRAP Shares Its Archive of Thousands of U.S. Government Policy and Training Documents Obtained Through the Freedom of Information Act*, IRAP (last accessed Apr. 30, 2025), https://refugeerights.org/news-resources/irap-shares-its-archive-of-thousands-of-u-s-government-policy-and-training -documents-obtained-through-the-freedom-of-information-act.

[7] *Id.*

4

## FREEDOM OF INFORMATION ACT APPEAL

people. These materials are widely disseminated to the public free-of-charge through IRAP's legal information website, blogs and publications posted on its website, and social media platforms.[8] In 2025 alone, in response to the Trump-Vance Administration's various immigration-related executive orders, and especially those concerning refugees and asylum seekers and other displaced people seeking safety, IRAP has published several relevant and timely explainers and resources.[9]

IRAP's primary activity, like that of plaintiffs in *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246 (D.D.C. 2005) (finding non-profit coalition promoting civil rights entitled to expedited processing), is thus information dissemination. Like the Leadership Conference on Civil Rights, IRAP's "mission is to serve as the site of record for relevant and up-to-the minute…news and information" about governmental policies affecting refugees, asylum seekers and other displaced people on the move. 404 F. Supp. 2d at 260. Furthermore, IRAP's five-pronged, integrated model,[10] as articulated to achieve its mission, is similar in scope to the three-pronged model[11] outlined by the Brennan Center for Justice, a nonprofit legal organization which, in a previous FOIA request to another federal agency, was granted expedited processing.[12] The FOIA Request, made by IRAP, a nonprofit organization primarily engaged in information dissemination, thus meets the second requirement under 6 C.F.R. § 5.5(e)(1)(ii).

### B. The AOS Pause Directive(s) Impacts People's Lives and Physical Safety

Second, and independently, there is a "compelling need" for expedition here because the AOS Pause Directive(s) leaves at least approximately 120,000 refugees and asylees impacted by the Directive(s) because they are eligible for adjustment of status that would protect them from detention and removal to countries where their physical safety or lives are in danger. *See* 5

---

[8] *See, e.g., IRAP Shares U.S. Government Training and Guidance Documents Related to Afghan Refugee, Asylum, SIV, and Parole Processing*, IRAP (last accessed Apr. 28, 2025), https://refugeerights.org/news-resources/irap-shares-u-s-government-policy-training-and-other-documents-related-to-afghan-refugee-asylum-siv-and-parole-processing; *Practice Advisory: New Central American Minors (CAM) Program Documents Answer Questions About Processing*, IRAP (last accessed Apr. 28, 2025), https://refugeerights.org/news-resources/practice-advisory-new-central-american-minors-cam-documents-answer-questions-about-processing.

[9] *See, e.g., Recent changes to U.S. policies*, IRAP (last accessed May 6, 2025), https://support.iraplegalinfo.org/hc/en-us/categories/36658453335956-Recent-changes-to-U-S-policies; *IRAP Explainer on the U.S. Refugee Admissions Program Suspension*, IRAP (last accessed May 2, 2025), https://refugeerights.org/news-resources/irap-explainer-on-the-u-s-refugee-admissions-program-suspension; IRAP Explainer on Trump Policy Effects in the Western Hemisphere, IRAP (last accessed May 2, 2025), https://refugeerights.org/news-resources/irap-explainer-on-trump-policy-effects-in-the-western-hemisphere; IRAP Explainer on Initial Trump Actions Attacking Parole and Parolees, IRAP (last accessed May 2, 2025), https://refugeerights.org/news-resources/irap-explainer-on-initial-trump-actions-attacking-parole-and-parolees.

[10] *See supra note 3.*

[11] *See Mission & Impact*, Brennan Center for Justice (last accessed May 2, 2025), https://www.brennancenter.org/about/mission-impact ("The Brennan Center has built a distinct model to advance legal and policy change: We're a think-tank… We're an advocacy group… We're a cutting edge communications hub…").

[12] *See generally Brennan Ctr. for Just. at New York Univ. Sch. of L. v. United States Dep't of State*, 300 F. Supp. 3d 540 (S.D.N.Y. 2018).

## FREEDOM OF INFORMATION ACT APPEAL

U.S.C. § 552(a)(6)(E)(v)(I); 6 C.F.R. § 5.5(e)(1)(i). As detailed in the FOIA Request, the AOS Pause Directive(s) reportedly suspends the adjudication of adjustment of status applications for refugees and asylees, leaving these individuals in a state of, potentially, perpetual limbo. *See* Ex. A at 2-3.

Public release of the AOS Pause Directive(s) will help tens of thousands of refugees and asylees assess their risk of possible detentions and/or removals to countries where they would be left "at substantial risk of violence," which involves a "compelling need" warranting expedited processing based on a substantial risk to life and safety. *See Stevens v. U.S. Dep't of Health and Hum. Servs.*, 666 F. Supp. 3d 734, 746 (N.D. Ill. 2023) (holding requestor asserted a "compelling need" for documents to help an individual facing risk of removal to a country in which he would be "left homeless, destitute, and at substantial risk of violence"). They will be able to better plan for the safety and security of their families and communities. Here, without access to the AOS Pause Directive(s), tens of thousands of people are left unable to adequately assess their chances of permanent stability in the United States and risk of being subjected to removal proceedings or challenge such government action.

IRAP must access the AOS Pause Directive(s) immediately to understand the scope of the adjustment of status application pause and to inform refugees and asylees of the impacts of the pause, including loss of stability and permanency and possible removal.

### C. The AOS Pause Directive(s) Involves the Loss of Substantial Due Process Rights

Third, and independently, this FOIA request implicates the "loss of substantial due process rights." *See* 6 C.F.R. § 5.5(e)(1)(iii); Ex. A at 5. As noted above, the unpublicized AOS Pause Directive(s) appears to have indefinitely paused pending adjustment of status applications filed by up to 120,000 refugees and asylees, seemingly without giving the impacted applicants notice of or an opportunity to challenge the indefinite pause of their applications. *See* Ex. A at 5. This seriously implicates the refugees' and asylees' and their U.S.-citizen-family members' due process rights because, as discussed above, individuals who have adjusted their status to lawful permanent residence have a higher degree of statutory protection when facing removal. For example, lawful permanent residents may be removed only through a proceeding in immigration court and if specific statutory conditions are present. *See generally* 8 U.S.C. § 1229(a); *see also* 8 C.F.R. § 238.1(b) (explicitly carving out LPRs from expedited removal proceedings). In contrast, those with refugee and asylee status have different, and in many cases lesser, protections from losing that status. *See, e.g.,* 8 U.S.C. § 1228(b). Release of the AOS Pause Directive(s) is essential for impacted individuals to make informed decisions about their cases and their lives in the United States. At present, refugees and asylees who have come to expect an orderly, predictable, and established mechanism for adjusting their status are forced to apply and wait for adjustment under a heightened threat of detention or deportation—all with no knowledge of the underlying policy causing such an outcome.

## II. Challenge to Placement of FOIA Request on "Complex Track"

## **FREEDOM OF INFORMATION ACT APPEAL**

Separately, but relatedly, USCIS should not have placed the FOIA Request on the "complex track" or Track 2. IRAP's FOIA Request asks for a discrete and accessible finalized policy document or documents that is highly likely to total a very small number of pages, perhaps even fewer than five pages. Upon information and belief, USCIS produced a similar policy directive regarding a pause on applications filed by immigrants paroled into the United States only after advocates filed lawsuits challenging parole policies and demanding production of documents related to the pause.[13] That policy directive, entitled "Administrative Hold on All USCIS Benefit Requests filed by Parolees Under the Uniting for Ukraine (U4U) Process, Processes for Haitians, Cubans, Nicaraguans, and Venezuelans (CHNV) Process, or Family Reunification Parole (FRP) Process," is a **mere three pages**.[14] In the instant case, therefore, IRAP's FOIA Request for a specific record—a discrete and tiny universe of policy documents (or even one document)—warrants processing under the "simple track" or Track 1. *See* 6 C.F.R. § 5.5 (b) ("Among the factors a component may consider [to determine if a request is simple or more complex] are the number of pages involved in processing the request or the need for consultations or referrals.").

Thank you for your consideration of this appeal. If you have any questions, please contact Pedro Sepulveda at the email address or phone number below.

I certify that the information provided in support of the FOIA Request and this appeal is true and correct to the best of the Requestor's knowledge and belief. *See* 5 U.S.C. §552(a)(6)(E)(vi) and 6 C.F.R. § 5.5(e)(3).

Sincerely,

Pedro Sepulveda, Jr.,
Litigation Fellow
International Refugee Assistance Project
One Battery Park Plaza, 33rd Floor
New York, NY 10004
psepulveda@refugeerights.org
(646) 819-3805

---

[13] *See generally Asylum Seeker Advoc. Project v. USCIS*, No. 1:25-cv-02133-ALC (S.D. N.Y. Mar. 14, 2025) (FOIA lawsuit challenging the denial of expedited production of a single policy document, filed by the Asylum Seeker Advocacy Project, a legal advocacy nonprofit organization,); *see also Doe v. Noem*, No. 1:25-cv-10495-IT (D. Mass. Mar. 21, 2025), ECF No. 41-3 (disclosing the single three-page policy document at issue).

[14] *See Doe v. Noem*, No. 1:25-cv-10495-IT (D. Mass. Mar. 21, 2025), ECF No. 41-3.

# Exhibit A



**IRAP**
International Refugee
Assistance Project

Date: April 10, 2025

*Submitted via USCIS online portal FIRST*
U.S. Citizenship and Immigration Services (USCIS)
National Records Center (NRC)
FOIA/PA Office
P.O. Box 648010
Lee's Summit, MO 64064-8010

**Re: Freedom of Information Act Request for USCIS Directive Pausing Adjustment of Status Applications for Refugees and Asylees**
***EXPEDITED PROCESSING REQUESTED***

Dear FOIA Officer:

This letter constitutes a request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, submitted on behalf of the International Refugee Assistance Project ("IRAP" or "Requestor").

This request seeks a single document: a USCIS directive, date unknown, ordering an administrative pause on processing adjustment of status applications filed by refugees and asylees.[1] As of the last quarter of Fiscal Year 2024, 80,954 asylees and 44,601 refugees had adjustment of status applications pending before USCIS.[2]

IRAP asks that USCIS expedite its processing of this request and that any fees associated with this request be waived.

**I.    Requestor**
Requestor, IRAP, is a 501(c)(3) non-profit organization that utilizes media and systemic policy advocacy, direct legal aid, and impact litigation to serve refugees, asylum seekers and other people seeking safety. IRAP's mission includes disseminating current information about topics related to pathways for safety for displaced persons. *See* https://refugeerights.org/who-we-are/mission-values; https://refugeerights.org/news-resources-2.

---

[1] *See* Camilo Montoya-Galvez, *Trump administration pauses some green card applications as part of aggressive vetting effort*, CBS NEWS, (Mar 25, 2025, 1:42 PM), https://www.cbsnews.com/news/green-card-applications-trump-administration/.
[2] *See* ALL USCIS APPLICATION AND PETITION FORM TYPES (FISCAL YEAR 2024, QUARTER 4), USCIS, (Dec. 18, 2024), https://www.uscis.gov/sites/default/files/document/data/quarterly_all_forms_fy2024_q4.xlsx (hereinafter "FY24 Data").

## II.    Request for Information

**IRAP seeks just one document:** a USCIS directive, memorandum, or guidance document issued on an unknown date between January 20, 2025 and March 25, 2025, ordering an administrative pause on the processing, adjudication and/or finalizing of Adjustment of Status applications filed by refugees and asylees (the "AOS Pause Directive"). The existence of this directive was first reported by CBS News on March 25, 2025. *See* Camilo Montoya-Galvez, *Trump administration pauses some green card applications as part of aggressive vetting effort*, CBS News, Mar. 25, 2025, https://www.cbsnews.com/news/green-card-applications-trump-administration/, attached as **Exhibit A.**

## III.    Request to Expedite Processing

Requestor IRAP, a nonprofit organization that provides legal services to refugees and asylees, asks that USCIS expedite the processing of this FOIA request. Expedited processing is warranted because (1) there is "an urgency to inform the public about an actual or alleged federal government activity" by an organization "primarily engaged in disseminating information"; (2) the lack of expedited processing could pose an imminent threat to the life or physical safety of individuals impacted by the pause; and (3) the single policy document subject to this FOIA request involves the "loss of substantial due process rights." *See* 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5(e)(1).

**First**, Requestor must obtain the AOS Pause Directive as soon as possible because the AOS Pause Directive potentially leaves at least approximately 120,000 refugees and asylees imminently vulnerable to removal to countries where their physical safety or lives are in danger.[3] *See* 6 C.F.R. § 5.5(e)(1)(i).

The pause of adjustment of status case processing leaves refugees and asylees in limbo, without knowing whether they still have a means of achieving stability and safety in the United States after "fleeing persecution, torture and harm" in their home countries.[4] Requestor—and the public— must review the AOS Pause Directive immediately in order to understand the scope and basis of the administrative pause of adjustment of status applications filed by asylees and refugees, and to understand the impact on their ability to be granted lawful permanent residence in the United

---

[3] *See* FY24 Data (noting approximately 44,601 and 80,954 adjustment of status applications awaited decisions by USCIS for refugees and asylees, respectively); Lindsay Muir Harris, *Administration pause on "green card" processing is harmful to refugees and asylees*, THE HILL, (Apr. 3, 2025, 11:30 AM), https://thehill.com/opinion/5228314-immigration-policy-change/ (stating that refugees are required to apply for lawful permanent resident status one year after arrival to the United Status); Dan Gooding, *Trump Administration Pauses Some Green Card Applications*, NEWSWEEK, (Mar. 25, 2025, last updated 6:38 PM), https://www.newsweek.com/trump-administration-pauses-green-card-applications-refugees-asylum-seekers-2050388 (noting that "[t]he pause potentially leaves thousands of applicants with an even longer wait time for permanent residency while some of the legal pathways they arrived on are being dismantled by the Trump administration."); *cf.* Mattathias Schwartz, *Judge Blocks Trump Executive Order to Suspend Refugee Program*, N.Y. TIMES, (February 25, 2025), https://www.nytimes.com/2025/02/25/us/politics/trump-refugee-program.html (noting that "[m]ore than 3 million refugees have been admitted to the United States under the [USRAP].").

[4] *See* Ex. 4.

States, including any basis to challenge the suspension and delay of their applications. Without access to the AOS Pause Directive, hundreds of thousands of people will be left in limbo, and could be vulnerable to potential deportation, without due process, and harm in their home countries based on an undisclosed government directive.[5] *See* 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5(e)(1).

**Second**, the AOS Pause Directive is urgently needed to inform the public about "actual or alleged federal government activity" specifically, USCIS's pause on processing applications for Adjustment of Status filed by refugees and asylees. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5(e)(1)(ii).

According to reporting of a statement by the Department of Homeland Security, USCIS has already implemented an administrative pause of refugee and asylee Adjustment of Status applications "pending the completion of additional screening and vetting". *See* Ex. A. However, without the final AOS Pause Directive itself, impacted individuals and the public have little to no understanding of the federal government's policy, the details surrounding or rationale for the pause, or how to challenge or request review of a pause in a particular person's case or on a systemic basis.[6]

The federal government's actions substantially limiting access to asylum and suspending the U.S. refugee admissions program, has garnered widespread public interest[7] and the AOS Pause

---

[5] *See, e.g.*, Priscilla Alvarez and Michael Williams, Trump administration concedes Maryland father from El Salvador was mistakenly deported and sent to mega prison, https://www.cnn.com/2025/04/01/politics/maryland-father-mistakenly-deported-el-salvador-prison/index.html, CNN, (Apr. 2, 2025, last updated 3:37 PM) (describing the detention and wrongful deportation without due process of a noncitizen granted Withholding of Removal status); Tom Phillips and Clavel Rangel, 'Deported because of his tattoos': has the US targeted Venezuelans for their body art?, THE GUARDIAN, (Mar. 20, 2025, 7:42 PM), https://www.theguardian.com/us-news/2025/mar/20/deported-because-of-his-tattoos-has-the-us-targeted-venezuelans-for-their-body-art (profiling asylum seekers who, without due process, were detained and deported by the government).

[6] *See* Ex. A; *see also,* Suzanne Gamboa and Laura Strickler, *Trump administration stops processing some green cards 'to do more vetting'*, NBC NEWS, (Mar. 25, 2025, 6:18 PM), https://www.nbcnews.com/news/latino/trump-administration-stops-processing-green-cards-vetting-rcna198061 ("[USCIS's] statement did not address which applications were affected, whether the pause would affect spending at the agency, how long it would last and other questions asked by NBC News.").

[7] *See, e.g.*, *supra* notes 3, 5; *see also* Edward Helmore, *Trump administration apologizes for telling Ukrainian refugees to leave US*, THE GUARDIAN, (Apr. 5, 2025, last updated 2:05 PM), https://www.theguardian.com/us-news/2025/apr/05/trump-administration-apologizes-ukrainian-refugees (describing the aftermath of the government's mistaken notice to Ukrainian refugees to "depart the United States immediately" or they would "be subject to potential law enforcement actions [resulting] in [their] removal from the United States."); Mattathias Schwartz, *Judge Blocks Trump Executive Order to Suspend Refugee Program*, N. Y. TIMES, (February 25, 2025), https://www.nytimes.com/2025/02/25/us/politics/trump-refugee-program.html (highlighting the public's interest in challenges to the government's efforts to dismantle the USRAP, which has admitted "[m]ore than 3 million refugees [...] to the United States."); Sergio Martínez-Beltrán, *President Trump's suspension of asylum marks a break from U.S. past*, NPR, (Jan. 23, 2025, last updated 12:14 PM), https://www.npr.org/2025/01/23/nx-s1-5272406/trump-suspends-asylum (reporting the impact of the government's unprecedented suspension of asylum at the U.S.-Mexico border.).

3

Directive itself has been subject to numerous media articles.[8] It is thus critical for the public to have a clear understanding of a federal policy that curtails benefits for refugees and asylum seekers in the United States. *See* 6 C.F.R. § 5.5(e)(3) ("The existence of numerous articles published on a given subject can be helpful to establishing the requirement that there be an 'urgency to inform' the public on the topic").

Further, Requestor is an organization "primarily engaged in disseminating information." *See* 6 C.F.R. § 5.5(e)(1)(ii). Dissemination, at no cost, of accurate, current information about topics related to pathways to safety for displaced persons is crucial to IRAP's mission to create a world where people seeking safety are empowered. *See* https://refugeerights.org/who-we-are/mission-values. IRAP routinely uses materials obtained through FOIA and other methods to create and publish informational and educational materials about safe pathways for displaced people. These materials are widely disseminated to the public free-of-charge through IRAP's legal information website, blogs and publications posted on its website,[9] and social media platforms. *See, e.g.*, https://twitter.com/IRAP; https://www.facebook.com/RefugeeAssist/. IRAP's website dedicated to providing legal information about migration pathways to displaced people. *See* https://support.iraplegalinfo.org/hc/en-us was viewed by over 108,000 unique visitors between March 2024 and 2025. In the same timeframe, IRAP's News & Resources pages, *see* https://refugeerights.org/news-resources, that host its publications were viewed by over 200,000 unique visitors. Additionally, Requestor has frequent contact with national print and news media and plans to share the AOS Pause Directive with interested outlets. *See* https://refugeerights.org/news-resources. It is critical and urgent that a federal policy pausing the processing of adjustment of status applications and other benefits to at least 120,000 people in the United States be made public.

---

[8] *See, e.g.*, Ex. A.; Adam Gabbatt, *Trump officials pause some green card applications in immigration crackdown*, THE GUARDIAN, (Mar. 26, 2025, 9:41 PM), https://www.theguardian.com/us-news/2025/mar/26/trump-signal-chat-middle-east-opinion; Luis Pablo Beauregard, *Green Card Applications for Refugees and Asylees Suspended by Trump Administration*, EL PAÍS, (Mar. 26, 2025, 4:55 PM), https://english.elpais.com/usa/2025-03-26/united-states-suspends-green-card-processing-for-some-refugees-and-asylees.html; Allison Detzel, *Trump administration pauses processing some green cards, throwing thousands into limbo*, MSNBC, (Mar. 26, 2025, 4:48 PM), https://www.msnbc.com/top-stories/latest/trump-pauses-green-card-immigration-vetting-rcna198249, Suzanne Gamboa and Laura Strickler, *Trump administration stops processing some green cards 'to do more vetting'*, NBC NEWS, (Mar. 25, 2025, 6:18 PM), https://www.nbcnews.com/news/latino/trump-administration-stops-processing-green-cards-vetting-rcna198061, Dan Gooding, *Trump Administration Pauses Some Green Card Applications*, NEWSWEEK, (Mar. 25, 2025, last updated 6:38 PM), https://www.newsweek.com/trump-administration-pauses-green-card-applications-refugees-asylum-seekers-2050388; Rebecca Beitsch, *Administration pause on 'green card' processing is harmful to refugees and asylees*, THE HILL, (Mar. 25, 2025, 3:51 PM), https://thehill.com/homenews/5213453-us-green-card-application-pause/.

[9] *See, e.g.*, IRAP, *IRAP Shares Its Archive of Thousands of U.S. Government Policy and Training Documents Obtained Through the Freedom of Information Act*, https://refugeerights.org/news-resources/irap-shares-its-archive-of-thousands-of-u-s-government-policy-and-training-documents-obtained-through-the-freedom-of-information-act (Dec. 19, 2024); IRAP, *Offshoring Human Rights: Detention of Refugees at Guantánamo Bay*, available at: https://refugeerights.org/wp-content/uploads/2024/09/Offshoring-Human-Rights-Guantanamo-Bay-English-Report-September-2024-1.pdf (last updated Sept. 2024).

**Third**, this FOIA request implicates the "loss of substantial due process rights." *See* 6 C.F.R. § 5.5(e)(1)(iii). As noted above, the unpublicized AOS Pause Directive *indefinitely* paused pending immigration applications filed by up to 120,000 refugees and asylees, seemingly without giving the impacted applicants notice of or an opportunity to challenge the indefinite pause—essentially a constructive denial—of their applications. The federal government's constructive denial of immigration benefits, carried out via a nonpublic directive, likely violates applicants' right to due process. *See, e.g., Salgado-Diaz v. Gonzales*, 395 F.3d 1158, 1162 (9th Cir. 2005) ("Immigration proceedings . . . must conform to the Fifth Amendment's requirement of due process").

IRAP certifies that the information provided in support of the request for expedited processing is true and correct to the best of the Requestor's knowledge and belief. *See* 5 U.S.C. §552(a)(6)(E)(vi) and 6 C.F.R. § 5.5(e)(3).

## IV.    Request for Fee Waiver

The Requestor requests that USCIS waive all fees associated with this FOIA request. IRAP is entitled to a fee waiver because disclosure of the AOS Pause Directive "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 6 C.F.R. § 5.11(k) (records may be furnished without charge or at a reduced rate if the information is in the public interest, and disclosure is not in commercial interest of the requestor).

### a. Disclosure of the Information is in the Public Interest

Disclosure of the AOS Pause Directive will contribute significantly to the public's understanding of how the United States is processing applications for immigration benefits. In determining whether a disclosure of information is in the public interest, the Agency considers whether: (i) the subject of the request concerns "operations or activities of the federal government"; (ii) the disclosure is likely to contribute to an increased public understanding of government operations or activities; (iii) the disclosure of the requested information will contribute to the understanding of a "reasonably broad audience of persons interested in the subject"; and (iv) disclosure is likely to contribute a "significant extent" to the public's understanding of the subject in question. 6 C.F.R. §§ 5.11(k)(2)(i)-(iv). Each of these factors is satisfied here.

**First**, the AOS Pause Directive pertains directly to "operations or activities of the federal government," namely how USCIS, a federal agency, plans to treat applications for adjustment of status filed by at least approximately 120,000 refugees and asylees.

**Second**, disclosure of the currently private AOS Pause Directive will contribute to public understanding of USCIS's decision to pause processing of applications for adjustment of status, filed by at least approximately 120,000 refugees and asylees. To Requestor's knowledge, the AOS Pause Directive is not publicly available, thus its disclosure will contribute to the public's

understanding of this crucial government activity.

**Third**, disclosure of the AOS Pause Directive will contribute to the understanding of a reasonably broad audience of persons interested in the subject. As an initial matter, the information requested impacts at least approximately 120,000 refugees and asylees.[10] Additionally, as discussed above, the federal government's actions curtailing access to humanitarian immigration pathways is a matter of widespread public interest;[11] the public should thus have a better understanding of a federal policy that curtails benefits for refugees and asylees in the United States. Finally, IRAP has the capacity and intent to disseminate widely the AOS Pause Directive directly and through its media contacts. *See* 6 C.F.R. § 5.11(k)(2)(iii) (noting that a requestor's expertise in the subject area as well as his or her ability and intention to effectively convey information to the public shall be considered when evaluating this factor).

**Fourth**, disclosure of information obtained through this FOIA will likely contribute significantly to the public's understanding of USCIS's decision to pause adjustment of status applications filed by refugees and asylees. To IRAP's knowledge, the AOS Pause Directive is not yet public, thus its disclosure will help shed light on USCIS's approach to refugees' and asylees' applications for adjustment of status and give the public a better understanding of the same.

### b. Disclosure of the Information is Not in the Requestor's Commercial Interest

Requestor is a tax-exempt, not-for-profit 501(c)(3) organization. Requestor seeks the requested information for the purpose of educating our clients, members, and the public—not for the purpose of commercial gain. Requestor will also use the information obtained to inform our organizational materials and guidance, as IRAP provides free resources to displaced people across the world and refugees and asylees in the United States. As such, a waiver of fees is especially warranted given that "Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." *Jud. Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (internal quotation marks and citation omitted).

\* \* \*

---

[10] *See* FY24 Data (noting approximately 44,601 and 80,954 adjustment of status applications awaited decisions by USCIS for refugees and asylees, respectively); *cf.* Mattathias Schwartz, *Judge Blocks Trump Executive Order to Suspend Refugee Program*, N. Y. TIMES, (February 25, 2025), https://www.nytimes.com/2025/02/25/us/politics/trump-refugee-program.html (noting that "[m]ore than 3 million refugees have been admitted to the United States under the [USRAP].").

[11] *See supra* notes 7, 8.

Should the Agency deny the fee waiver request, IRAP requests to be notified in advance of incurring any costs exceeding $100. Please provide the requested records and direct any questions to:

Pedro Sepulveda
International Refugee Assistance Project
One Battery Park Plaza, 33rd floor
New York, NY 10004
(646) 819-3805
psepulveda@refugeerights.org

Thank you for your consideration.

Sincerely,

Pedro Sepulveda, Litigation Fellow, U.S. Litigation, IRAP

 **POLITICS** **EXCLUSIVE**

# Trump administration pauses some green card applications as part of aggressive vetting effort

By **Camilo Montoya-Galvez, Nicole Sganga**
Updated on: March 25, 2025 / 1:42 PM EDT / CBS News

*Washington* — The Trump administration has quietly paused the processing of green card applications filed by certain individuals, including approved refugees, as part of a broader effort to more aggressively vet immigrants, multiple sources familiar with the move told CBS News.

U.S. Citizenship and Immigration Services, or USCIS, recently directed officials to suspend processing of requests for legal permanent residency submitted by immigrants granted refugee or asylum status, according to the sources, who requested anonymity to discuss an action that has not been publicly reported.

The move will, for the time being, place in legal limbo immigrants who were granted refuge in the U.S. because they proved they could be persecuted in their home countries.

Refugees are granted entry into the U.S. after an overseas and exhaustive process of security checks, medical screenings and interviews that typically takes years to complete. Asylees are foreigners in the U.S. who are granted protection by immigration judges or asylum officers. Both populations have to prove they could face persecution because of certain characteristics, such as their political views, race or religion.

The Trump administration has targeted both congressionally enacted programs, suspending the refugee process and closing the asylum system at the U.S.-Mexico border through executive orders that are currently facing federal court challenges.



In a statement, the Department of Homeland Security confirmed CBS News' reporting, saying the green card processing pause is needed to comply with two executive actions issued by President Trump, including one that questioned immigration vetting procedures under the Biden administration.

"USCIS is placing a temporary pause on finalizing certain Adjustment of Status applications pending the completion of additional screening and vetting to identify potential fraud, public safety, or national security concerns, in alignment" with Mr. Trump's executive actions, DHS said in the statement. "Adjustment of status" is the official name of the green card process.

In one of the presidential proclamations cited by officials, Mr. Trump instructed federal agencies to "vet and screen to the maximum degree possible all aliens who intend to be admitted, enter, or are already inside the United States."

The other executive order cited by officials paved the way for the State Department to designate Mexican cartels and gangs like Tren de Aragua as foreign terrorist organizations.

The pause on some green card applications is the latest action taken by the Trump administration to restrict, tighten and, in some cases, suspend legal immigration procedures on the basis of concerns about national security and fraud.

Last month, the administration, citing vetting and fraud concerns, paused all immigration applications filed by immigrants from Latin America and Ukraine who arrived in the U.S. under two Biden-era programs that relied on an authority known as humanitarian parole. The government did not announce that move publicly, but CBS News disclosed it on Feb. 19.

The administration said last week it would give over half a million migrants from Cuba, Haiti, Nicaragua and Venezuela who came to the U.S. under one of the programs 30 days to self-deport or face arrest and deportation. Trump officials have claimed the migrants were "loosely vetted" by the Biden administration and noted the program was plagued by fraud concerns.

Trump administration officials have also announced plans to more heavily scrutinize and review the social media accounts of immigrants applying for legal status, including U.S. citizenship, green cards and asylum. USCIS said the vetting of social media accounts is required for "the enhanced identity verification, vetting and national security screening."

The agency has long reviewed the social media information of immigrants applying for certain immigration benefits, but the new plan would require those applicants to submit their social media accounts, or handles, to the government for review.

More

## Immigration



**Trump authorizes military to take control of public land along southern border**



**Judge allows government to continue effort to deport Mahmoud Khalil**



**Judge says DOJ didn't comply with order on man deported to El Salvador**



**Supreme Court rules U.S. must facilitate return of man mistakenly deported**

### Camilo Montoya-Galvez



Camilo Montoya-Galvez is the immigration reporter at CBS News. Based in Washington, he covers immigration policy and politics.

# Exhibit B

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
*National Records Center*
P.O. Box 648010
Lee's Summit, MO 64064-8010



**U.S. Citizenship
and Immigration
Services**
Control Number: COW2025002595

April 17, 2025

Pedro Sepulveda
One Battery Park Plaza
33rd Floor
New York, NY 10004

Dear Pedro Sepulveda:

We received your request for information on April 10, 2025. Your request asked for:

"This request seeks a single document: a USCIS directive, date unknown, ordering an administrative pause on processing adjustment of status applications filed by refugees and asylees.1 As of the last quarter of Fiscal Year 2024, 80,954 asylees and 44,601 refugees had adjustment of status applications pending before USCIS.2."

We may need to contact you at a later date to discuss the scope of your request.

Your request is being handled under the provisions of the Freedom of Information Act (5 U.S.C. § 552). It has been assigned the following control number: COW2025002595. Please cite this number in all future correspondence about your request.

We respond to requests on a first-in, first-out basis and on a multi-track system. Your request has been placed in the complex track (Track 2).

Based on the information you provided, we have determined that expedited processing of your request is not warranted. The Department of Homeland Security Freedom of Information Act regulation at 6 C.F.R. § 5.5(e)(1) requires that you demonstrate that your request warrants expedited treatment because it involves:

(i) Circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual;

(ii) An urgency to inform the public about an actual or alleged federal government activity, if made by a person who is primarily engaged in disseminating information;

(iii) The loss of substantial due process rights; or

(iv) A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.

Additionally, 6 C.F.R. § 5.5(e)(3) requires that a requester who seeks expedited processing must submit a statement, certified to be true and correct, explaining in detail the basis for making the request for expedited processing. Furthermore, requests for expedited processing that are based on paragraph (e)(1)(iv) of this section must be submitted to the Senior Director of FOIA Operations, the Privacy Office, U.S. Department of Homeland Security, 245 Murray Lane SW STOP-0655, Washington, D.C. 20598-0655. If you can demonstrate any further showing as to the nature and degree of (i), (ii), or (iii) of the above categories, please submit this additional information to this office for reconsideration.

You have the right to file an administrative appeal within 90 days of the date of this letter. By filing an appeal, you preserve your rights under FOIA and give the agency a chance to review and reconsider your request and the agency's decision. You may file an administrative FOIA appeal by mail to USCIS FOIA/PA Appeals Office, 150 Space Center Loop, Suite 500, Lee's Summit, MO 64064-2139. Both the

www.uscis.gov

COW2025002595
Page 2

letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

If you would like to discuss our response before filing an appeal to attempt to resolve your dispute
without going through the appeals process, you may contact our USCIS FOIA Public Liaison at U.S.
Citizenship and Immigration Services, National Records Center, FOIA/PA Office, P.O. Box 648010,
Lee's Summit, MO 64064-8010, or by email at FOIAPAQuestions@uscis.dhs.gov.

A USCIS FOIA Public Liaison is an agency official to whom FOIA requesters can raise concerns about
the service the requester has received from the agency's FOIA Office. USCIS FOIA Public Liaisons are
responsible for assisting in reducing delays, increasing transparency, and understanding of the status of
requests, and assisting in the resolution of disputes.

If you are unable to resolve your FOIA dispute through our USCIS FOIA Public Liaison, you may contact
the Office of Government Information Services (OGIS) at the National Archives and Records
Administration to inquire about the FOIA mediation services they offer.  The contact information for
OGIS is Office of Government Information Services, National Archives and Records Administration,
8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001; email ogis@nara.gov; telephone 202-
741-5770; toll free 877-684-6448; or facsimile 202-741-5769.

Your request for a fee waiver has been granted.

Consistent with 6 C.F.R. § 5.5(a) of the Department of Homeland Security (DHS) FOIA regulations,
USCIS processes FOIA requests according to their order of receipt. Although USCIS' goal is to respond
within 20 business days of receipt of your request, FOIA does permit a 10 business day extension of this
time period in certain circumstances. Due to the increasing number of FOIA requests received by this
office, we may encounter some delay in processing your request. Additionally, due to the scope and
nature of your request, USCIS will need to locate, compile, and review responsive records from multiple
offices, both at headquarters and in the field. USCIS may also need to consult with another agency or
other component of the Department of Homeland Security that have a substantial interest in the
responsive information. Due to these unusual circumstances, USCIS will invoke a 10 business day
extension for your request pursuant to 5 U.S.C. § 552(a)(6)(B). Please contact our office if you would like
to limit the scope of your request or to agree on a different timetable for the processing of your request.
We will make every effort to comply with your request in a timely manner.

The National Records Center (NRC) has the responsibility to ensure that personally identifiable
information (PII) pertaining to U.S. Citizenship and Immigration Services (USCIS) clients is protected. In
our efforts to safeguard this information, we may request that additional information be provided to
facilitate and correctly identify records responsive to your request. Though submission of this information
is voluntary, without this information, your request may be delayed while additional steps are taken to
ensure the correct responsive records are located and processed. Further, if we are unable to positively
identify the subject of the record we may be unable to provide records responsive to your FOIA request.

How to Check the Status of Your Request

You may check the status of your FOIA request online at first.uscis.gov/#/check-status. If you have any
questions concerning your pending FOIA/PA request, or to check the status of a pending application or
petition, please call the USCIS Contact Center at 800-375-5283 (TTY 800-767-1833).

How to submit Questions or Changes

COW2025002595
Page 3

Questions concerning this FOIA/PA request may be mailed to U.S. Citizenship and Immigration Services, National Records Center, FOIA/PA Office, P.O. Box 648010, Lee's Summit, MO 64064-8010 or emailed to FOIAPAQuestions@uscis.dhs.gov. All FOIA/PA related requests, including address changes must be submitted in writing, and signed by the requester. Please include the control number listed above on all correspondence. For more information regarding the USCIS FOIA Program, please visit the USCIS website at www.uscis.gov/FOIA.

Sincerely,

James A Baxley
Chief FOIA Officer
Freedom of Information Act & Privacy Act Unit